```
1  Lori Rifkin (S.B. # 244081)
2  Sairah Budhwani (S.B. # 327996)
   RIFKIN LAW OFFICE
3  3630 High St. #18917
   Oakland, CA 94619
4  Telephone: (510)414-4132
   E-mails: lrifkin@rifkinlawoffice.com
5           sbudhwani@rifkinlawoffice.com

6  Attorneys for Plaintiffs
```

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| G YI (HOPE GAHYOUNG YI),<br><br>Plaintiffs,<br><br>vs.<br><br>STANFORD UNIVERSITY; COUNTY OF SANTA CLARA; OFFICER RICHARD RONDEAU, in his individual capacity; OFFICER RILEY FRIZZELL, in his individual capacity; LIEUTENANT CAESAR CAMPOS, in his individual capacity; CAPTAIN NUNO RIBEIRO, in his individual and official capacity; CHIEF/DIRECTOR LAURA WILSON, in her individual and official capacity; and SHERIFF LAURIE SMITH, in her individual and official capacity.<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Excessive Force in Violation of the Fourth Amendment (42 U.S.C. § 1983);<br>2. Disability Discrimination (ADA and Rehabilitation Act)<br>3. Disability Discrimination in Violation of the Unruh Civil Rights Act (Cal. Civ. Code § 51)<br>4. Violation of the Bane Act (Cal. Civ. Code § 52.1)<br>5. Violation of the Ralph Act (Cal. Civ. Code § 51.7)<br>6. Negligent Supervision, Training, Hiring, and Retention<br>7. Battery by a Peace Officer<br>8. Intentional Infliction of Emotional Distress<br>9. Negligent Infliction of Emotional Distress<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT FOR DAMAGES

**INTRODUCTION**

1.      On March 21, 2019, a psychologist at Stanford University's student health center requested Stanford Department of Public Safety ("SDPS") officers to transport G Yi, a graduate student, to Stanford Hospital for the purpose of a psychiatric hold, commonly referred to as a "5150 hold." G has both physical and psychiatric disabilities and was experiencing a flare-up of fibromyalgia symptoms at the time. When SPDS officers arrived, G calmly explained to officers that they[1] suffer from chronic pain and experience convulsive spasms, especially in response to touch. G asked the officers to be gentle when handcuffing them, a request the officers verbally acknowledged. Nevertheless, one of the SPDS officers roughly grabbed G's arm and painfully twisted it to apply handcuffs. G then experienced a spasm (involuntary movement) of that arm. Ignoring G's pleas that their arm was in pain and to please listen to them, the officer yanked G's arm further back. According to the police officers' own accounting of the incident, two SPDS officers then grabbed G, slammed G's head against the wall, and took G forcibly to the ground. One or both officers then trampled on G's legs while holding G down.

2.      The SPDS officers' assault on G was not justified by any reasonable concern that G posed a serious safety risk, and constituted an unreasonable and excessive use of force.

3.      The officers' unreasonable and excessive use of force worsened G's pre-existing disabilities and caused new impairments, such as functional quadriplegia, hearing loss, decreased vision, and issues with working/short-term memory retention and recall. As a result of the significant physical and mental impairments and financial burden caused by SDPS officers' excessive use of force, G has also had to forego necessary medical procedures and professional goals.

**JURISDICTION**

4.      This Complaint seeks damages for violations of the civil rights, privileges, and immunities guaranteed by the Fourth Amendment of the United States Constitution, pursuant to 42

---

[1] As a transgender person who does not identify as either female or male, G uses the singular "they," "them," and "their" third-person gender-neutral pronouns. *See* "*They,*" MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/they. The term "transgender" refers to a person whose sex assigned at birth (i.e. the sex assigned by a physician at birth, usually based on external genitalia) does not match their gender identity (i.e. one's psychological sense of their gender).

COMPLAINT FOR DAMAGES       -1-

U.S.C. §§ 1983 and 1988, for violations of the Americans with Disabilities Act, Title II, 42 U.S.C. § 12191, *et seq*., for violations of the Rehabilitation Act, Section 504, 29 U.S.C. § 794a, and for violations of California state law.

5. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §§ 1331 and 1343.

6. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367, because the claims form part of the same case or controversy arising under the United States Constitution and federal law.

## VENUE

7. Plaintiffs' claims, alleged herein, arose in the County of Santa Clara, California. Venue therefore lies in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2).

8. Rule 3 of the Federal Rules of Civil Procedure and Local Rule 3-2(e) authorizes assignment to this division because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the counties served by this division.

## PARTIES

9. Plaintiff G Yi is a 26 year old Korean-American non-binary person who resided in Santa Clara County at the time of the March 21, 2019 incident giving rise to this case. Their legal name is Hope Gahyoung Yi, but they use the name G Yi. G brings claims based on violations of the Fourth Amendment, ADA, Rehabilitation Act, and California state laws.

10. Defendant STANFORD UNIVERSITY is a private university located in the County of Santa Clara. Stanford contracts with the County of Santa Clara for both day-to-day and supplemental law enforcement services through a Memorandum of Understanding ("MOU"). The Stanford Department of Public Safety is a division of Stanford University and employs full-time peace officers deputized by the County of Santa Clara, which the MOU refers to as "Stanford Reserves." The SDPS officers are deputized under the authority of the County as peace officers to enforce the laws of the United States of America and the State of California, as well as the ordinances of the County of Santa Clara. The MOU requires that SDPS officers fulfill the standards for employment and training as prescribed by the California Commission on Peace Officer Standards and Training. They are charged with general law enforcement duties on the Stanford University campus and its neighboring

community, including deterring and preventing violations of, and enforcing all applicable laws and conducting initial and follow-up investigations of alleged crimes.

11. Defendant COUNTY OF SANTA CLARA is a public entity, duly organized and existing under the laws of the State of California. Under authority granted by Cal. Gov. Code § 53069.8(a)(4), the Santa Clara County Board of Supervisors contracts on behalf of the Santa Clara County Sheriff's Office to provide law enforcement services to Stanford University. The terms of this relationship are set forth in an ongoing MOU between the County of Santa Clara and Stanford University.

12. Defendant RICHARD RONDEAU is, and was at all times relevant herein, an officer employed by the Stanford University Department of Public Safety and deputized by the Sheriff of the County of Santa Clara. Defendant Rondeau is being sued in his individual capacity.

13. Defendant RILEY FRIZZELL is, and was at all times relevant herein, an officer employed by the Stanford University Department of Public Safety and deputized by the Sheriff of the County of Santa Clara. Defendant Frizzell is being sued in his individual capacity.

14. Defendant CAESAR CAMPOS is, and was at all times relevant herein, an officer employed by the Stanford University Department of Public Safety and deputized by the Sheriff of the County of Santa Clara. Defendant Campos is a Lieutenant and serves as a Supervisor to SDPS officers, including Officer Rondeau and Officer Frizzell, and reviewed and ratified the officers' use of excessive force against G. Defendant Campos is responsible for supervising SDPS officers, and maintaining, promulgating, and implementing policies and practices regarding use of force and interaction with persons with disabilities by SDPS officers. Defendant Campos is being sued in his individual capacity.

15. Defendant NUNO RIBEIRO is, and was at all times relevant herein, employed as Sheriff's Captain by the Santa Clara County Office of the Sheriff to carry out the Santa Clara County Sheriff's oversight and operational authority under the MOU referenced above. As Sheriff's Captain, Defendant Ribeiro is responsible for oversight, training, supervision, and discipline of SDPS officers, and maintaining, promulgating, and implementing policies and practices regarding SDPS officers' use of force and interaction with persons with disabilities. Defendant Ribeiro is being sued in his

individual and official capacities.

16. Defendant LAURA WILSON is, and was at all times relevant herein, the Chief and Director of the Stanford University Department of Public Safety, employed by the Stanford University Department of Public Safety, and deputized by the Sheriff of the County of Santa Clara. As Chief and Director, Defendant Wilson is responsible for recommending SDPS officers for deputization, for hiring, screening, oversight, control, training, supervision, discipline, counseling, and retention of SDPD officers, and for maintaining, promulgating, and implementing policies and practices regarding the use of force and interaction with persons with disabilities by SDPS officers. Defendant Wilson is being sued in her individual and official capacities.

17. Defendant LAURIE SMITH is, and was at all times relevant herein, the Sheriff of the County of Santa Clara and employed by the County of Santa Clara. As Sheriff, Defendant Smith deputizes SDPS officers to serve as peace officers and is responsible for oversight of the SDPS officers, including the approval for deputization of SDPS officers, the hiring, screening, oversight, control, training, supervision, discipline, counseling, and retention of SDPS officers, and maintaining, promulgating, and implementing policies and practices regarding the use of force and interaction with persons with disabilities by SDPS officers. Defendant Smith is being sued in her individual and official capacities.

**FACTUAL ALLEGATIONS**

18. G Yi is a 26 year old Korean-American residing in Oakland, CA. At the time of the events leading to this case, G was enrolled in a Master's program in Communications with a specialty in Media Studies at Stanford University. G also attended Stanford University as an undergraduate student and earned a Bachelor's degree with honors in Comparative Studies in Race & Ethnicity. They were highly involved in student organizations during their time at Stanford, including as Director of Mental Health & Wellness for the Associated Students of Stanford University, as co-founder of the Mental Health & Wellness Coalition that initiated and integrated mental health efforts across student organizations, and as a peer counselor. Prior to the incident, G had completed an internship at the Center for Asian American Media. After graduation, they were considering returning there and/or producing the pilot episode of a TV show that they had written while earning their Master's degree.

COMPLAINT FOR DAMAGES                -4-

19. At the time of this incident, G had been diagnosed with physical and psychiatric disabilities for a number of years, including chronic pain in the forms of fibromyalgia[2] and migraines, convulsive spasms, post-traumatic stress disorder (PTSD), attention-deficit hyperactivity disorder (ADHD), and dissociative identity disorder (DID).[3] G is also diagnosed with gender dysphoria[4] and related anxiety and depression.

20. On March 21, 2019, G visited Vaden Health Center (Stanford University's student health center) to complete a therapy appointment from the previous day. Based on that appointment, G believed that their clinician was concerned that G was not eating and did not have adequate support to cope with their fibromyalgia symptoms. To allay these concerns, G brought their mother and a friend to the health center on this day. G, G's mother, and G's friend all met with the on-call psychologist, Dr. Banks.

21. After speaking with G, Dr. Banks concluded that G required emergency psychiatric hospitalization. G disagreed that this was necessary or appropriate, but Dr. Banks nevertheless requested that SDPS officers place G on a "5150 hold." A 5150 hold is 72-hour involuntary commitment to a hospital for psychiatric treatment and observation that is implemented by a professional concerned that the patient, due to a mental health disorder, is gravely disabled or may harm themselves. California Welfare & Institutions Code § 5150.

22. SDPS Officers Richard Rondeau and Riley Frizzell arrived at Vaden Health Center to respond to the 5150 call. According to the police incident report, Dr. Banks explained her reason for

---

[2] Fibromyalgia is a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory, and mood issues. *See Fibromyalgia*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/fibromyalgia/symptoms-causes/syc-20354780.

[3] Dissociative Identity Disorder is a severe form of dissociation, a mental process which produces a lack of connection in a person's thoughts, memories, feelings, actions, or sense of identity. *See Dissociative Identity Disorder (Multiple Personality Disorder)*, WEB MD, https://www.webmd.com/mental-health/dissociative-identity-disorder-multiple-personality-disorder.

[4] Gender dysphoria is a serious medical condition characterized by clinically significant distress or impairment that results from a marked and persistent incongruence between one's sex assigned at birth and one's gender identity. *See What Is Gender Dysphoria?*, AMERICAN PSYCHIATRIC ASSOCIATION, https://www.psychiatry.org/patients-families/gender-dysphoria/what-is-gender-dysphoria.

COMPLAINT FOR DAMAGES        -5-

placing G on psychiatric hold to the officers and then told G that the officers were there to provide transportation to the Stanford Hospital.

23. G alerted the officers that, as a result of their medical conditions and disabilities, they were experiencing pain and sensitivity to touch, and would be prone to spasms not in their control as a result of being physically handled. They requested that the officers be gentle when handcuffing them. The officers verbally acknowledged and agreed to G's request. Officer Rondeau then told G to turn around and put their hands behind their back. G complied with these directions.

24. Despite G's advisement that they were in pain and were sensitive to touch as a result of their medical conditions and disabilities, Rondeau sharply twisted one of G's arms while applying handcuffs. G informed him repeatedly that he was twisting their arm in a painful way, requesting several times to the effect of "please stop" and "please listen to me." However, Officer Rondeau did not change the manner in which he was applying handcuffs or lessen the force with which he was pulling G's arm.

25. G then experienced a spasm (involuntary movement) of the arm that Officer Rondeau was twisting. In response, Rondeau pulled G's arm further back, causing more pain, and called over his radio that "subject is being combative." Rondeau and Frizzell then grabbed G and slammed G's head and upper body against the nearby wall. According to the police incident report, Rondeau told Frizzell to take G down. The officers forcibly took G down to the floor and one or both officers trampled on G's legs while holding G immobile on the ground.

26. As a result of the injuries that Defendant officers inflicted, G developed a number of physical and mental conditions, and their pre-existing physical and mental disabilities worsened. These include, *inter alia*:

- Defendant officers' slamming of G's head against the wall caused a concussion and post-concussion syndrome, the symptoms of which have been long-lasting. G now has hearing difficulties that require a hearing aid, as well as photophobia (light sensitivity), decreased vision, and near-constant migraines.
- Defendant officers' trampling of G's legs caused functional quadriplegia, requiring G to use a wheelchair nearly all of the time outside their home, and a rolling walker or walking

- sticks at home. G now also requires the help of an aide for day-to-day tasks such as bathing.
- For about seven months after Defendant officers' use of excessive force, G experienced cognitive issues such as aphasia (difficulty with speech) and still experiences residual difficulty speaking.
- G continues to experience issues with forming, retaining, and recalling new memories and has developed allodynia, dyslexia and dyscalculia.[5]
- G's fibromyalgia pain has significantly increased since the incident.
- Symptoms of G's post-traumatic stress disorder and dissociative identity disorder have also worsened, causing night terrors about the day of the incident and resurfaced memories of past sexual, physical, and emotional trauma.

27. The physical, psychological, and financial strain of these conditions on G forced them to postpone medically necessary gender-affirming surgery that they had originally planned to begin in the summer of 2019. This has drastically worsened their gender dysphoria, anxiety, and depression.

28. As a result of these new and worsened medical conditions, G required accommodations for their classes such as having a notetaker and receiving videotaped or livestreamed access to lectures, as well as accommodations in their housing, such as the installation of accessibility functions (wheelchair accessible doors, shower bar and chair, blinking doorbell). Due to the difficulties of completing schoolwork under these conditions, G graduated one year after they had originally planned to and therefore also had to pay for an extra year of tuition and related school expenses.

//

//

//

---

[5] Dyslexia is a reading disability and dyscalculia is a disability involving comprehension, memory of numbers, and mathematical concepts. Allodynia is a type of fibromyalgia pain that is caused by stimuli that are not normally painful, such as a gentle touch. It can result from nerve-related conditions. *See Dyslexia*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/dyslexia/symptoms-causes/syc-20353552; *Dyscalculia: Know the Signs*, HEALTHLINE, https://www.healthline.com/health/dyscalculia#diagnosis; Adrienne Dellwo, *Allodynia: A Rare, Distinct Type of Pain in Fibromyalgia and ME/CFS*, VERY WELL MIND (Updated Feb. 6, 2020).

COMPLAINT FOR DAMAGES                -7-

# CLAIMS FOR RELIEF

## First Claim for Relief

### Excessive Force in Violation of the Fourth Amendment to the U.S. Constitution

### (42 U.S.C. § 1983)

**(Against Defendants County of Santa Clara, Richard Rondeau, Riley Frizzell, Caesar Campos, Nuno Ribeiro, Laura Wilson, and Laurie Smith)**

29. Plaintiff incorporates all of the above previous paragraphs as if fully set forth herein.

30. Defendant officers' use of force against Plaintiff was unnecessary, excessive, and unreasonable under the circumstances.

31. Defendant officers' unjustified use of excessive force deprived Plaintiff of their rights under the Fourth Amendment.

32. Defendant officers' unlawful use of force caused Plaintiff extreme pain and suffering, both physical and mental.

33. All of the acts of Defendant officers were done under color of state law. SDPS officers acted pursuant to the authority granted to them by the County of Santa Clara.

34. Defendant Campos reviewed and ratified Defendant officers' use of excessive force against G.

35. Defendants County of Santa Clara, Sheriff's Captain Ribeiro, Chief/Director Laura Wilson, and Sheriff Laurie Smith permitted a policy, custom, and/or practice of conscious disregard of and reckless indifference to constitutional rights.

36. The policy, custom, and/or practice of SDPS officers, under the authority of the County of Santa Clara and Sheriff Smith, was a cause of Plaintiff's injury because this policy, custom, and/or practice failed to provide adequate training, guidance, and supervision to officers with respect to constitutional limits on the use of force; failed to provide adequate discipline, training, corrective action, and supervision to officers with a propensity for violence or a history of violence and unreasonable use of force; and failed to provide adequate training and supervision to officers with respect to the appropriate procedures to be followed in dealing with persons with mental and physical disabilities in need of psychological treatment.

37. As a direct and legal result of Defendants' acts and omissions, Plaintiff suffered damages, including, without limitation, pain and suffering; emotional distress; attorneys' fees; costs of suit; other pecuniary losses not yet ascertained.

38. The individual Defendants, by engaging in the aforementioned acts or omissions, engaged in willful, malicious, intentional, oppressive and despicable conduct, and/or acted with willful and conscious disregard of the rights, welfare, and safety of Plaintiff, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

**Second Claim for Relief**

**Discrimination on the Basis of Disability**

**(Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a)**

**(Against Defendants Stanford University and County of Santa Clara)**

39. Plaintiff incorporates all of the above previous paragraphs as if fully set forth herein.

40. At all relevant times, Plaintiff suffered from a "disability" within the meaning and scope of 42 U.S.C. §12102 as a result of their physical and psychiatric conditions. Accordingly, Plaintiff was a member of the class of persons protected by the ADA and Section 504 of the Rehabilitation Act, which make it unlawful for a public entity and entities receiving federal funds to discriminate against an individual with a disability, or to deny the benefits of the services, programs, or activities of a public entity or entity receiving federal funds to a person with a disability.

41. Defendants discriminated against Plaintiff because of Plaintiff's disabilities and denied them the benefits of public services, programs and activities as a result of their disabilities by, among other things: failing to provide proper and reasonable training to Stanford officers who are deputized by the County of Santa Clara regarding how to respond to and transport persons with physical and mental disabilities; failing to respond reasonably in dealing with a person with physical and mental disabilities who experienced an episode of pain and distress; and using violent action to subdue Plaintiff because of their physical and mental disabilities.

42. The acts and omissions of Defendants violated the ADA and Section 504, which prohibit discrimination on the basis of physical and psychiatric disabilities, and protect persons such as

Plaintiff from the type of injuries and damages set forth herein.

43. As a direct and legal result of Defendants' acts and omissions, Plaintiff suffered damages, including, without limitation, pain and suffering; emotional distress; attorneys' fees; costs of suit; other pecuniary losses not yet ascertained.

### Third Claim for Relief

### Discrimination on the Basis of Disability and Medical Condition

### (Unruh Act, Cal. Civ. Code § 51)

### (Against Defendant Stanford University)

44. Plaintiff incorporates all of the above previous paragraphs as if fully set forth herein.

45. Cal. Civ. Code § 51 prohibits discrimination based on specific characteristics, including disability and medical condition, and requires "full and equal accommodations, advantages, facilities, privileges, or services," in all business establishments in the State of California.

46. At all relevant times, Plaintiff suffered from physical and psychiatric disabilities and medical conditions as stated above.

47. Plaintiff was denied full and equal accommodations, advantages, facilities, privileges, or services at and by Stanford University and the officers it employs. Plaintiff's disabilities were a motivating factor for this denial.

48. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered damages, including, without limitation, pain and suffering; emotional distress; attorneys' fees; costs of suit; other pecuniary losses not yet ascertained.

### Fourth Claim for Relief

### Violation of the Bane Act (Cal. Civ. Code § 52.1)

### (Against Defendants Richard Rondeau and Riley Frizzell)

49. Plaintiff incorporates all of the above previous paragraphs as if fully set forth herein.

50. Cal. Civ. Code § 52.1 prohibits interference or attempts of interference with a person's state, federal statutory, or constitutional rights by threats, intimidation, or coercion.

51. The Fourth Amendment to the United States Constitution guarantees the right of persons to be free from unreasonable seizures and from the use of unnecessary and excessive force by

law enforcement officers. By engaging in the wrongful conduct alleged herein, including but not limited to the use of excessive force in placing handcuffs on Plaintiff, slamming them against a wall, forcing them down to the ground, and trampling on their legs, Defendants Richard Rondeau and Riley Frizzell denied Plaintiff their Fourth Amendment right, thus giving Plaintiff a claim for damages pursuant to Cal. Civ. Code § 52.1.

52. By engaging in the wrongful conduct alleged herein, Defendants Richard Rondeau and Riley Frizzell denied Plaintiff their rights under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, thus giving Plaintiff a claim for damages pursuant to Cal. Civ. Code § 52.1

53. By engaging in the wrongful conduct alleged herein, Defendants Richard Rondeau and Riley Frizzell denied Plaintiff their rights under Cal. Civ. Code § 51 (the Unruh Act), thus giving Plaintiff a claim for damages pursuant to Cal. Civ. Code § 52.1

54. By engaging in the wrongful conduct alleged herein, Defendants Richard Rondeau and Riley Frizzell denied Plaintiff their rights under the Cal. Civ. Code § 51.7 (the Ralph Act), thus giving Plaintiff a claim for damages pursuant to Cal. Civ. Code § 52.1

55. Defendants' interference with Plaintiff's rights was by intimidation and coercion, through the use of excessive and unreasonable force.

56. As a direct and proximate result of Defendants' conduct, Plaintiff suffered injuries and damages as alleged herein.

57. The aforementioned acts and/or omissions of Defendants were willful, wanton, malicious, and oppressive, thereby justifying an award to Plaintiff of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

### Fifth Claim for Relief

### Violation of the Ralph Act (Cal. Civ. Code § 51.7)

### (Against Defendants Richard Rondeau and Riley Frizzell)

58. Plaintiff incorporates all of the above previous paragraphs as if fully set forth herein.

59. Cal. Civ. Code § 51.7 prohibits violence or threat of violence based on specific characteristics, including disability and medical condition.

60. Defendants committed violent acts against Plaintiff by painfully twisting their arm, slamming them against a wall, forcing them to the floor, and trampling on their legs. Defendants were motivated by Plaintiff's disabilities and/or medical and psychiatric conditions in committing the violent acts. Plaintiff was harmed as a direct and proximate result of Defendants' actions as alleged herein.

### Sixth Claim for Relief

**Negligent Supervision, Training, Hiring, and Retention (California State Law)**

**(Against Defendants Stanford University, Caesar Campos, and Laura Wilson)**

61. Plaintiff incorporates all of the above previous paragraphs as if fully set forth herein.

62. Defendants had a duty to hire, supervise, train, and retain employees and/or agents so that employees and/or agents refrained from the conduct and/or omissions alleged herein.

63. Defendants breached this duty, causing the conduct alleged herein. Such breach constituted negligent hiring, supervision, training, and retention under the laws of the State of California.

64. As a direct and proximate result of Defendants' failure, Plaintiff suffered injuries and damages as alleged herein.

65. The aforementioned acts of Stanford University, Lieutenant Caesar Campos, and Chief/Director Laura Wilson were conducted with conscious disregard for the safety of Plaintiff and others, and were therefore malicious, wanton, and oppressive. As a result, these Defendants' actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

### Seventh Claim for Relief

**Battery by a Peace Officer (California State Law)**

**(Against Defendants Richard Rondeau and Riley Frizzell)**

66. Plaintiff incorporates all of the above previous paragraphs as if fully set forth herein.

67. Defendants Rondeau and Frizzell used unreasonable force on Plaintiff by twisting their arm painfully, slamming them against a wall, forcing them down to the ground, and trampling on their legs when taking them into custody on a 5150 hold, thereby intentionally touching Plaintiff against

their consent, where Plaintiff was in fact harmed by Defendants' conduct and a reasonable person in Plaintiff's position would have been offended. Defendants' use of unreasonable force was a substantial factor in causing Plaintiff's harm.

68. As a direct and proximate result of Defendants' conduct, Plaintiff suffered injuries and damages as alleged herein.

69. Plaintiff's injuries entitle them to compensatory and punitive damages according to proof as to the individual Defendants.

### Eighth Claim for Relief

### Intentional Infliction of Emotional Distress (California State Law)

### (Against Defendants Richard Rondeau and Riley Frizzell)

70. Plaintiff incorporates all of the above previous paragraphs as if fully set forth herein.

71. Defendants intentionally inflicted emotional distress on Plaintiff by engaging in extreme and reckless behavior that intended to cause them emotional distress and/or by acting with reckless disregard of the possibility that Plaintiff would suffer emotional distress. Plaintiff did in fact suffer severe emotional distress, and continues to suffer emotional distress, as a result of Defendants' conduct.

72. As a direct and proximate cause of the aforementioned acts of Defendants, Plaintiff was injured as set forth above.

73. Defendants' actions were malicious, oppressive and/or in reckless disregard of the Plaintiff's rights, thereby justifying an award to Plaintiff of exemplary or punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

### Ninth Claim for Relief

### Negligent Infliction of Emotional Distress (California State Law)

### (Against Stanford University, Richard Rondeau, Riley Frizzell, Caesar Campos, and Laura Wilson)

74. Plaintiff incorporates all of the above previous paragraphs as if fully set forth herein.

75. Defendants' conduct at issue herein was negligent. Plaintiff suffered serious emotional distress and continues to suffer significant emotional distress.

Defendants' negligence was a substantial factor in causing Plaintiff's serious emotional distress as a result of Defendants' negligence.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief the following relief:

1. For compensatory, general and special damages against each Defendant, jointly and severally, in an amount to be proven at trial;
2. General damages, including damages for physical and emotional pain, emotional distress, hardship, suffering, shock, the loss of services and medical treatment, worry, anxiety, sleeplessness, illness and trauma and suffering, lost wages, earning potential, and additional tuition and other school-related expenses;
3. Prejudgment interest;
4. For punitive and exemplary damages against Officer Richard Rondeau, Officer Riley Frizzell, Lieutenant Caesar Campos, Captain Nuno Ribeiro, Chief/Director Laura Wilson, Sheriff Laurie Smith, and Stanford University in an amount appropriate to punish Defendant(s) and deter others from engaging in similar misconduct;
5. For costs of suit and reasonable attorneys' fees and costs pursuant to 42 U.S.C § 1988, and as otherwise authorized by statute or law;
6. For restitution as the Court deems just and proper;
7. For such other relief, including injunctive and/or declaratory relief, as the Court may deem proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury in this action.

DATED: March 18, 2021              Respectfully Submitted,

                                   RIFKIN LAW OFFICE

                                   By:   /s/ Lori Rifkin
                                         Lori Rifkin
                                         Sairah Budhwani
                                   Attorneys for Plaintiffs

COMPLAINT FOR DAMAGES        -14-